**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**GAIL OBBARIUS as Representative of Craig Obbarius (Deceased),**

Plaintiff,

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a foreign corporation,**

Defendant.

Civil No. 01-1709 (MJD/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Lloyd T. Merrigan, Esq. and Thomas K. Cambre, Esq. for Plaintiff

Daniel Ryan, Esq. and Brian Lindberg, Esq. for Defendant Connecticut General Life Insurance Company

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on August 14, 2003, on Defendant Connecticut General Life Insurance Company's Motion for Summary Judgment (Doc. No. 65) and Plaintiff Gail Obbarius's Motion for Summary Judgment (Doc. No. 69). The District Court has referred this case to the undersigned for a Report and Recommendation.

## I. BACKGROUND

Plaintiff Gail Obbarius ("Plaintiff") brings this lawsuit as representative of her deceased husband, Craig Obbarius ("Obbarius"),

AUG 19 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff seeks to enforce the terms of the Siemens Power Transmission and Distribution, LLC ("Siemens") Long Term Disability Plan ("Plan") and asks the Court to overrule the determination of Defendant Connecticut General Life Insurance Company ("CGLIC") that Obbarius was not disabled from any occupation and was therefore not entitled to long term disability ("LTD") benefits and waiver of premium ("WOP") under the Plan.

## II. STANDARD OF REVIEW

The first determination for the Court is what facts to consider, which is determined by the standard of review. Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993). CGLIC contends the Court should undertake a deferential review in which the Court would look only at the record before the claims administrator at the time CGLIC made the decisions at issue. Id. Plaintiff asks the Court to conduct a de novo review, in which case the Court could consider an expanded factual record. Id. A deferential standard of review is appropriate under 29 U.S.C. § 1132(a)(1)(B) if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In this case, the relevant language of the Plan reads as follows.

> If you believe you are entitled to a benefit and have not been notified that one is payable, or if you disagree with the amount of the benefit that is payable, you may file a written claim with the plan's claim administrator.
>
> A decision on a claim will be given to you or your beneficiary as soon as possible, but no later than 90 days after a claim is filed, or 180 days in special cases, [sic] if a decision on a claim cannot be made within 90 days, you will be notified in writing before the end of this 90-day period of the special circumstances that require an extended period of consideration of your claim, and the approximate date for which a decision is to be made on your claim.
>
> If a claim is denied in part or in whole, you, your dependent, or your beneficiary will receive written notification from the plan's claims administrator. The notification will explain why and on which plan provisions the claim has been denied and how to file an appeal. An appeal on claim decisions under all of the plans is made to the Administrative Committee of Siemens Corporation. The appeal must be within 60 days after a denial, by writing to the Administrative Committee. . . .

(Lindberg Aff. Ex. B at 3.) The document later establishes: "The Administrative Committee has full and exclusive authority to interpret all provisions of the plans, to determine eligibility for benefits, and to construe the terms of all the plans." (Id.)

Nowhere in this document is language giving CGLIC, the claims administrator, discretion to determine eligibility for benefits. The only discretionary language relates to the appeal process, and the language explicitly gives the discretionary authority to the Administrative Committee of

Siemens Corporation, not CGLIC. To this, CGLIC responds that it is clear from the record that Siemens delegated its authority to handle claims appeals to CGLIC. (Def. Reply Mem. & Mem. Opp. Pl. Mot. Summ. J. at 3 n.1.) Moreover, CGLIC points out that Plaintiff acquiesced to this delegation of authority by appealing directly to CGLIC, not to the Siemens's Administrative Committee, and if Plaintiff's current challenge to the procedure is validated, Plaintiff will not have exhausted her administrative remedies because she failed to appeal to the Committee.

Plaintiff contends that the above facts establish that the administrative appeal was improperly undertaken, and the Court agrees. However, neither party is blameless in creating the irregularity. Plaintiff did not follow the Plan in appealing the adverse decision of the claim administrator, and CGLIC considered the appeal even though it did not have express authority to do so under the Plan. Generally, the Court would recommend dismissing without prejudice the claim of a plaintiff who fails to exhaust administrative remedies where the Plan requires exhaustion before filing suit. See, e.g., Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998) (citing Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994)). However, if resorting to the Plan's procedures would be futile, the exhaustion requirement may be waived. Moline Mach. Ltd. v. Pillsbury Co., No. CIV. 00-2353 (MJD/RLE), 2001 WL 1766339, at *2 (D. Minn. Dec 21, 2001) (citations

omitted). Here, although neither party has raised or addressed the issue, the Court finds that requiring Plaintiff to appeal to Siemens's Administrative Committee would be futile; by CGLIC's own admission and what is apparent from the administrative record is that Siemens "delegated" its authority to review appeals to CGLIC.

However, Plaintiff should not now be permitted to benefit from her failure to appeal in accordance with the Plan by automatically receiving a de novo review of the adverse decision. Because Plaintiff acquiesced in, indeed caused, CGLIC's review of the appeal, it is fair to say that CGLIC "stood in the shoes" of Siemens's Administrative Committee and held its discretionary authority in reviewing the appeal. This circumstance can be characterized as a procedural irregularity in the administration of the Plan.

The Court must determine whether the procedural irregularity was so egregious as to warrant a less deferential standard of review. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). To obtain this lesser standard, the plaintiff must show "(1) that a serious procedural irregularity existed, which (2) caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary." Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996). The plaintiff must show "material probative evidence, beyond the mere fact of the apparent irregularity, tending to show that the administrator breached his fiduciary obligation . . . ." Id.

(citation omitted) (requiring circumstances such as a plan administrator's failure to inquire into the underlying facts or issue a written decision). In other words, a plaintiff must have evidence that the result was arbitrary or based on the whim of the plan administrator. Heaser v. Toro Co., 247 F.3d 826, 833 (8th Cir. 2001) (quoting Layes v. Mead, 132 F.3d 1246, 1250 (8th Cir. 1998)). In this case, Plaintiff has come forth with no evidence other than the irregularity. There is no evidence that the procedural irregularity – the appeal undertaken by CGLIC rather than the Siemens Administrative Committee -- caused a serious breach of fiduciary duty to Plaintiff. Thus, Plaintiff is not entitled to de novo review of the denial of benefits.

Under the abuse of discretion standard of review, the decision of the claims administrator must be affirmed if a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (quoting Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996) (abrogated on other grounds by Black & Decker Disability Plan, 123 S. Ct. 1965 (2003))) (emphasis in original). The determination of reasonableness depends on "whether the decision is supported by substantial evidence which is 'more than a scintilla, but less than a preponderance.'" Woo, 144 F.3d at 1162 (quotation omitted). A court may consider only evidence before the claim administrator when the denial was

made. Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002).

## III. THE FACTUAL RECORD BEFORE THE CLAIM ADMINISTRATOR

Prior to the termination of his employment in October 2000, Obbarius worked for Siemens as a systems technician and installer of computer systems. Obbarius's employment made him eligible for LTD benefits and WOP benefits under the group employee benefits plan offered by Siemens. CGLIC issued an LTD policy to Obbarius in connection with the Plan. CGLIC also administered claims for LTD and WOP benefits filed by Siemens employees.

The LTD policy affords benefits to employees who are totally disabled. Plan documents define "total disability" for LTD insurance as follows.

> You will be considered Totally Disabled, if because of any Injury or Sickness, you are unable to perform the essential duties of your occupation.
>
> After Monthly Benefits have been payable for 24 months, you will be considered Totally Disabled only if, because of Injury or Sickness, you are unable to perform the essential duties of any occupation for which you are or may reasonably become qualified based on your education, training, or experience.

CG 555 (emphasis added).

On January 8, 1999, Obbarius completed an application for LTD benefits under the Plan. CG 457-58. He stated he became totally disabled on March 1, 1997 due to a stroke during an angiogram. Id. He reported visual

loss, confusion, difficulty making decisions, weakness on his left side, anxiety problems, and memory loss. Id. CGLIC began to gather, review, and evaluate medical records and opinions relating to Obbarius's claim.

CGLIC case manager Kelly L. Caulfield requested and received medical records from Obbarius's treating physicians, Dr. Donald Duncan and Dr. B.L. Cosens. CG 95, 202. Obbarius was discharged from the hospital on April 2, 1998 following a prolonged hospitalization. CG 301. He had been admitted with chest pain and underwent a coronary angiography, which resulted in cholesterol embolization to Obbarius's brain and right hand fingers. Id. On May 13, 1998, Dr. Duncan wrote that Obbarius "is doing remarkably well" and that Obbarius felt his mental function was almost normal. CG 300.

Dr. Stephanie Boyle treated Obbarius from June 18, 1998 to October 22, 1998. CG 345. Dr. Boyle referred him to Dr. Norman Cohen for a neuropsychological evaluation approximately six months after his brain injury. CG 348-52. The testing revealed that Obbarius scored at least in the average range in virtually all domains, although he remained in the lower portion of the average range in visual problem solving. Dr. Cohen felt Obbarius was far more prepared to return to work than he was several months ago. Dr. Cohen did not recommend a repeat neuropsychological examination.

Dr. Duncan saw Obbarius on April 2, 1999, and his assessments were adrenal insufficiency secondary to bilateral adrenalectomy for Cushing's

disease as a child, right maxillary sinusitis, impaired mentation secondary to previous cerebral emboli, and arteriosclerotic heart disease with recurrent congestive heart failure. CG 183. Dr. Duncan noted that because the cerebral insult had occurred over a year before, he did not expect any further improvement. CG 184. He considered Obbarius permanently disabled. Id. On April 26, 1999, Dr. Duncan told case manager David Hissong over the telephone that Obbarius was disabled due to brain damage. CG 318. Medical records from Dr. Duncan also reflect an appointment with Obbarius on August 5, 1999, in which Dr. Duncan noted that Obbarius was "totally disabled" and was unable to work as a computer technician. CG 176. Dr. Duncan wrote that Obbarius had pain in both feet at night and his biggest complaint was fatigue. Id.

On July 12, 1999, CGLIC approved Obbarius's claim for LTD benefits based on the "own occupation" standard set forth in the Plan. CG 271-72, 555. In the approval letter, CGLIC advised Obbarius that he would qualify for LTD benefits after the first twenty-four months only if he was "unable to engage in the essential duties of any occupation," in accordance with the Plan language. CG 272, 555. CGLIC paid monthly benefits for twenty-four months, from August 1998 to August 2000. CGLIC continued to investigate whether Obbarius would be eligible for benefits after the twenty-four month period.

In November 1999, Obbarius filled out a disability questionnaire in which he stated that heart problems, exhaustion, lack of concentration, memory loss, and inability to walk or stand for very long rendered him unable to work. CG 202. He gave his treating physicians as Dr. Duncan and Dr. Cosens, both of whom he had last seen in August 1999.

On May 10, 2000, Caulfield noted that she intended to follow-up with Dr. Duncan as he had not responded to two previous requests for information. CG 95. In response to Caulfield's third request, Dr. Duncan returned an incomplete Physical Ability Assessment, in which he did not fill out any information but wrote "See enclosures" across the page. CG 97-98. The pages following the form do not contain physical ability assessments. The documents did contain notations that Obbarius's memory was poor and he had not been able to return to his work as a computer technician. CG 102.

On October 11, 2000, CGLIC issued a denial of benefits letter based on the "any occupation" disability definition. CG 54-57. Caulfield summarized medical evidence from Dr. Cosens, Dr. Duncan, and a Social Security Independent Medical Examiner, Dr. Curtis Levang, who is a psychologist. Dr. Cosens's notes stated Obbarius was doing well on his medications; his anxieties were under control; his blood pressure was normal; eating and weight were stable; and his sleep was decent, but his energy was low. Dr. Cosens felt the lack of energy and endurance did not seem to

significantly affect Obbarius. Dr. Duncan noted that Obbarius was quite forgetful and had a short attention span; Obbarius was hospitalized following an apparent seizure after he quickly stood and lost consciousness; and Obbarius had a right carotid endarterectomy in which he had only minimal neurological problems post-operatively. The results of the Independent Medical Examination ("IME") indicated that Obbarius functioned independently, although he had impairment in his processing speed and ability to concentrate; he could understand and follow instructions; he had some limitations in his ability to carry out tasks with reasonable persistence and pace and to handle stress in the workplace. Caulfield again followed up with Dr. Cosens and Dr. Duncan, but neither doctor had additional records to give her. When Caulfield wrote the letter denying Obbarius's claim on October 11, 2000, she noted the significance of the lack of medical records from May 2000 showing that Obbarius was unable to perform the duties of any occupation. CG 56.

Obbarius appealed the decision to terminate his LTD and WOP claims on December 11, 2000. CG 50. Case manager Dennis Kosoglow was assigned to handle the appeal. CG 53. On January 20, 2001, Dr. Duncan wrote to Obbarius's lawyer to provide "an update on the condition of Mr. Craig Obbarius," and he stated: "Because of the mental impairment and the arteriosclerotic heart disease with angina, I would definitely feel that Craig Obbarius is disabled from performing the type of work for which he was trained

in the past or any similar occupation." CG 41. Dr. Duncan attached his dictation from a visit with Obbarius on January 11, 2001 to the letter. CG 42. This record states, "Mentally there has been no improvement. Has been unable to work. Also, has chest pain several times a day for which he takes nitroglycerine." Id. The assessment was adrenal insufficiency, hypercholesterolemia, arteriosclerotic heart disease with angina, and decreased cognitive function as a result of cerebro arteriole sclerosis. Id.

During the investigation of Obbarius's appeal, case manager Dennis Kosoglow made repeated attempts to learn from Dr. Duncan specific information which would support a finding that Obbarius was totally disabled. CG 27-30. On April 11, 2001, Dr. Duncan finally left Kosoglow a telephone message requesting that Kosoglow call him. CG 27. Dr. Duncan also said on the message that he believed Obbarius was disabled from his job as a computer technician. Id. Kosoglow returned the call and left a message for Dr. Duncan, who apparently did not return Kosoglow's call. Id.

Kosoglow issued a decision on April 25, 2001 that Obbarius was not considered disabled from any occupation, and the appeal was therefore denied. CG 19. Kosoglow noted that Dr. Duncan opined that Obbarius was disabled from any occupation due to his mental impairment and arteriosclerotic heart disease with angina. CG 21. However, Kosoglow found fault with Dr. Duncan's opinion because he did not indicate how Obbarius's

mental impairment prevented him from working and did not identify what particular restrictions and limitations resulted from the heart condition. Id. Kosoglow noted that Dr. Duncan did not complete a Physical Abilities Assessment form to document Obbarius's functionality. CG 22. Kosoglow further noted that Dr. Duncan indicated on April 11, 2001 that Obbarius was disabled from performing his own job, but he did not indicate that Obbarius was disabled from any occupation. Id. Kosoglow concluded that the medical documentation in Obbarius's file did not support his claim that his conditions were so severe as to prevent him from working in any occupation. CG 21.

## IV. DISCUSSION OF THE CLAIM ADMINISTRATOR'S DECISION

As previously discussed, the Court will review the decision of the claim administrator for an abuse of discretion, that is, whether a reasonable person could have reached a similar decision. The Court finds that CGLIC did not abuse its discretion in finding that Obbarius was not totally disabled from performing any occupation.

### A. Evidence from Dr. Duncan

First, considering only medical records from Dr. Duncan, Obbarius's primary treating physician, the records do not established that Obbarius was totally disabled. Dr. Duncan does not explicitly opine that Obbarius was precluded from working in any occupation. Most of Dr. Duncan's conclusions are qualified; for example, on one occasion he stated that Obbarius could not return to work in his prior job as a computer

repairmen or a similar job. When specifically pressed by CGLIC for an explanation near the end of the appeal process, Dr. Duncan said that he believed Obbarius was disabled from his job as a computer technician. Although there is also evidence in the record from Dr. Duncan reflecting an opinion that Obbarius was permanently disabled and unable to work, this evidence does not eviscerate other evidence supporting CGLIC's conclusion. See Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 888 (8th Cir. 2002).

In Jackson, the treating physician indicated that the plaintiff "was totally disabled for his old job and for any other occupation." Id. However, the record also contained evidence from the same doctor that he would not recommend plaintiff's employment at his previous job. Id. The court found that the insurance company did not abuse its discretion in denying benefits because the treating physician offered inconsistent opinions as to the plaintiff's ability to work. Id. at 888-89. In the case at bar, a similar inconsistency existed in Dr. Duncan's own conclusions, and it was not unreasonable for CGLIC to adopt his opinion that Obbarius could not return to his previous work as a computer technician. The inconsistency distinguishes this case from House v. Paul Revere Life Ins. Co., 241 F.3d 1045 (8th Cir. 2001), where the treating physician did not vacillate in his opinion that the plaintiff was totally disabled from performing work in any occupation. Id. at 1047-48 (noting that the evidence "unequivocally supported House's entitlement to benefits.").

Moreover, Dr. Duncan failed to respond to inquiries from CGLIC on numerous occasions regarding the extent of Obbarius's disability, and he never completed a physical assessment questionnaire. Dr. Duncan indicated in a letter dated January 20, 2001 that Obbarius's disabling conditions were brain damage/mental impairment and arteriosclerotic heart disease with angina. CG 41. In the same letter, however, Dr. Duncan also said that Obbarius's chest pain was relieved by medication and that his blood tests "looked good" except for elevated triglyceride and cholesterol levels. Dr. Duncan's treatment notes do not indicate how Obbarius's heart disease prevented him from working in any occupation. Rather, the doctor observed that Obbarius's biggest complaint was fatigue, and he also had some foot pain at night. CG 176. Dr. Duncan's notes regarding Obbarius's mental functioning reveal that he suffered primarily from a short attention span and forgetfulness, but again, the notes do not explain how this would preclude him from working in any occupation. See, e.g., CG 85, 102. In fact, Dr. Duncan at one time characterized Obbarius's cerebral function as only "mildly decreased." CG 173. Thus, even considering only Dr. Duncan's records, the Court cannot conclude that CGLIC erred in its determination.

Furthermore, CGLIC was not obligated to defer to Dr. Duncan's ultimate opinion that Obbarius was totally disabled merely because Dr.

Duncan was Obbarius's treating physician. As the United States Supreme Court held recently in Black & Decker Disability Plan:

> Nothing in the Act [ERISA] itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

123 S. Ct. at 1970. Distinguishing ERISA cases from Social Security cases, the Court observed that unlike the Social Security Administration, the Secretary of Labor had not implemented regulations instructing plan administrators to give deference to the opinions of treating physicians. Id. at 1970 (citing 29 C.F.R. § 2560.503-1 (2002)).

Plaintiff also argues that CGLIC should have arranged for an IME to refute Dr. Duncan's opinion. However, this was not required because CGLIC could rely exclusively on evidence from Dr. Duncan to find Obbarius was not totally disabled. Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998).

In conclusion, the Court finds that a reasonable person could have reached a similar decision with respect to whether Obbarius could work in any occupation, based solely on the records from Dr. Duncan. The decision to deny Obbarius benefits was supported by substantial evidence.

**B. Other Record Evidence**

Other record evidence also exists supporting CGLIC's determination. Psychiatrist Dr. Levang evaluated Obbarius in the context of an

application for social security benefits. CG 106-113. After conducting several tests on Obbarius, he concluded that Obbarius's scores fell primarily in the average to low-average range for mental functions such as verbal IQ, performance IQ, verbal comprehension, perceptual organization, working memory, and processing speed. Dr. Levang concluded:

> The intellectual testing suggests that Mr. Obbarius has impairment in his processing speed as well as loss in his ability to concentrate over extended periods of time. He appears quite able to understand and follow instructions. He has some limitations in his ability to carry out tasks with reasonable persistence and pace. He seems able to respond appropriately to co-workers and supervisors. He may have some limitations in his ability to handle stress in the work place due to anxiety symptoms. He is able to manage his finances.

CG 112-13. Dr. Levang did not find that Obbarius was totally unable to perform the essential duties of any occupation.

Dr. Stephanie Boyle saw Obbarius several times. In 1999, she commented that Obbarius had the most difficulty with decreased energy and fatigue. CG 181. However, Dr. Boyle further noted that Obbarius's strength was a 5 out of 5; he had finger coordination; he was able to stand on both his right and left legs; and he could tandem walk without difficulty.

Although the evidence from other medical sources is not abundant, some of it does support CGLIC's determination that Obbarius was not totally disabled. More importantly, the Court cannot conclude from the additional information that a reasonable person could not have made the same

determination as CGLIC. CGLIC is entitled to summary judgment on Plaintiff's ERISA claim for LTD and WOP benefits.

## V. PLAINTIFF'S OTHER CLAIMS

In Plaintiff's Amended Complaint, she also seeks reinstatement of coverage under a Siemens medical benefits plan, restitution of COBRA premiums, and the proceeds of a Group Universal Life Insurance Policy and Basic Life Insurance Policy. Siemens is no longer a Defendant in this case. Plaintiff does not identify whether these claims were brought against Siemens or CGLIC, and she has not moved for summary judgment against CGLIC on these claims. CGLIC has moved for summary judgment on these claims against Plaintiff, however, and the Court finds this aspect of CGLIC's motion should be granted. CGLIC argues that the reinstatement of coverage under a Siemens medical benefits plan, restitution of COBRA premiums, and the proceeds of a Basic Life Insurance Policy are preempted by § 1132(a)(1)(B), and Plaintiff has not contested this assertion. Section 1132(a)(1)(B) limits a plan participant's recovery to benefits specifically provided for by the contractual documents constituting the employee benefits plan in question. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985). Plaintiff has come forth with no evidence that CGLIC contracted with Siemens or Obbarius to provide employees with medical insurance coverage, COBRA coverage, or benefits under the Basic Life Insurance Policy. CGLIC issued only the group LTD

policy, which was discussed above, and a Group Universal Life Insurance Policy. CGLIC contends it has paid the Group Universal Life Insurance Policy in full, and Plaintiff has not disputed this contention. Thus, CGLIC's motion for summary judgment should be granted as to Plaintiff's claims seeking reinstatement of coverage under a Siemens medical benefits plan, restitution of COBRA premiums, and the proceeds of a Group Universal Life Insurance Policy and Basic Life Insurance Policy.

Plaintiff also filed a claim of wrongful termination from Siemens. She did not file for summary judgment on this claim against CGLIC, but CGLIC has filed for summary judgment against Plaintiff. CGLIC was not Obbarius's employer, and Plaintiff has offered no facts or argument why this part of CGLIC's motion should not be granted. CGLIC is entitled to summary judgment on Plaintiff's claim of wrongful termination.

Finally, because Plaintiff is not the prevailing party in this case, her request for attorney's fees must be denied. Lawrence v. Westerhaus, 749

F.2d 494, 496 (8th Cir. 1984) (citing Fase v. Seafarers Welfare & Pension Plan, 589 F.2d 112, 116 (2d Cir. 1978)).

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) Defendant's Motion for Summary Judgment (Doc. No. 65) should be **GRANTED**; and

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 69) should be **DENIED**.

Dated: August 19, 2003

JONATHAN LEBEDOFF
Chief United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by Sept. 8, 2003, written objections which specifically identify those portions of this Report to which objections are being made and the basis of those objections. A party may respond to the objecting party's brief within ten days after being served with it. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.